**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 19-cv-1411-WJM-KMT

KENNETH F. BOWMAN,

     Plaintiff,

v.

KATHLEEN HAWK SAWYER,
J.E. KRUEGER,
BRAD GRELICK, and
S. ZERR,

     Defendants.

---

## ORDER ON RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE

---

This matter is before the Court on the August 31, 2020 Recommendation of United States Magistrate Judge Kathleen M. Tafoya that Defendants Kathleen Hawk Sawyer, J.E. Krueger, Brad Grelick, and S. Zerr's Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(6) (ECF No. 39) be granted.  (ECF No. 93).  The Recommendation is incorporated herein by reference.  *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

Plaintiff Kenneth Bowman, proceeding *pro se*, filed Plaintiff's Objections to Magistrate's Report and Recommendation ("Objections") on September 30, 2020. (ECF No. 98.)  Defendants filed a Response to Objections on October 14, 2020.  (ECF No. 100.)  For the reasons set forth below, the Recommendation is adopted and Plaintiff's Objections are overruled.

## I.  BACKGROUND

In the Amended Prisoner Complaint, filed September 13, 2019, Plaintiff asserts six Eighth Amendment claims related to his incarceration at the Federal Correctional Institute ("FCI") in Englewood, Colorado, and Defendants' alleged failure to comply with the American Correctional Association ("ACA") standards.  (ECF No. 15.)

In Claim One, Plaintiff alleges the ACA standards require the prison to provide, "at a minimum, 25 square feet of unencumbered space per occupant, with a minimum of one (1) bed, desk, locker, and chair per person."  (*Id.* at 5.)  Plaintiff alleges he is housed in a ten-man cubicle that limits him and other prisoners to 8.8 square feet per person and that they are forced to share four desks because there is no room for more. (*Id.*)  Plaintiff also complains about industrial fans exceeding approved noise levels in the sleeping areas, extreme heat conditions during the summer due to inadequate ventilation, and extremely limited availability of showers, sinks, and toilet facilities.  (*Id.*)

In Claim Two, Plaintiff alleges FCI Englewood fails to comply with the ACA requirement to provide "a minimum ration of one toilet for every ten inmates . . . ."  (*Id.* at 7.)  He alleges the Upper East Center Range living quarters houses 82 inmates, who have access to only four toilets.  (*Id.*)

In Claim Three, Plaintiff alleges FCI Englewood fails to comply with the ACA requirement to provide one wash basin for every twelve occupants.  (*Id.* at 8.)  Plaintiff alleges 82 inmates have access to only four wash basins.  (*Id.*)

In Claim Four, Plaintiff alleges FCI Englewood fails to comply with the ACA standard requiring a minimum ration of one shower for each eight occupants.  (*Id.* at 9.)

Plaintiff alleges 82 inmates have access to only three showers.  (*Id.*)

In Claim Five, Plaintiff alleges FCI Englewood fails to comply with the Bureau of Prisons ("BOP") policies for acceptable indoor air quality.  (*Id.* at 10.)

Finally, in Claim Six, Plaintiff alleges FCI Englewood is in violation of both "National and Colorado State Fire and Life Safety Codes" because of the overcrowding and obstacles littering the hallways and sleeping quarters.[1]  (*Id.* at 11.)

Plaintiff claims Defendants' failures to comply with the ACA requirements cause him "anxiety, depression, sleep disorders, panic attacks, anti-social behavior, insecurity and emotional outbursts, [and] serious symptoms of yet undiagnosed PTSD."  (*Id.* at 5.) Plaintiff states he has been placed on the highest dosage of medication to control these symptoms.  (*Id.*)

Plaintiff sues all Defendants in their individual and official capacities.  (*Id.* at 2–4.) In his request for relief, Plaintiff seeks injunctive relief enjoining FCI Englewood from accepting future inmates until all deficiencies are corrected and from transferring Plaintiff to another institution or taking retaliatory actions for filing this suit; requiring FCI Englewood to replace the walls which were removed to make the ten-man cubicles and restore the original four-man cubicles; and requiring FCI Englewood to update its

---

[1] Unlike Claims One through Four, Claims Five and Six are not labeled as Eighth Amendment claims, but in the Supporting Facts section of these claims, Plaintiff states that "[t]hese living conditions violate my Eighth Amendment right to adequate well being" and that Defendants' "deliberate indifference to these National and State Fire and Life Safety Codes present a constant risk to my mental and physical well being, and thus violate the Eighth Amendment of the United States Constitution."  (ECF No. 15 at 10–11.)

Defendants also address this point in the Motion to Dismiss: "Although not labeled as Eighth Amendment claims, Defendants assume that was Bowman's intent since he has identified no other basis for suing a United States agency and its employees."  (ECF No. 39 at 21 n.13.)

facilities to meet all ACA, BOP, National Fire and Life Safety Codes, and constitutional requirements.  (*Id.* at 13.)  Plaintiff also requests damages of $5,000 per day until every violation is corrected, including reasonable attorneys' fees and punitive damages.  (*Id.*)

Defendants move to dismiss Plaintiff's claims in their entirety.  (*See* ECF No. 39.)

## II.  LEGAL STANDARDS

### A.    Review of a Magistrate Judge's Recommendation

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to."  An objection to a recommendation is properly made if it is both timely and specific.  *United States v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Id.*  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*

### B.    Review of a *Pro Se* Plaintiff's Pleadings

The Court must construe a *pro se* plaintiff's pleadings "liberally"—that is, "to a less stringent standard than formal pleadings filed by lawyers."  *Smith v. United States*, 561 F.3d 1090, 1096 (10th Cir. 2009).  It is not, however, "the proper function of the district court to assume the role of advocate for the pro se litigant."  *Id.*; *see also Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989) ("[W]e will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been

4

pleaded.").

### C.    Rule 12(b)(2) Motion to Dismiss

The purpose of a motion to dismiss under Rule 12(b)(2) is to determine whether the Court has personal jurisdiction over a defendant.  The plaintiff bears the burden of establishing personal jurisdiction, and may satisfy this burden by making a *prima facie* showing that personal jurisdiction over the defendants obtains.  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  If the presence or absence of personal jurisdiction can be established by reference to the complaint, the Court need not look further.  *Id*.  The plaintiff, however, may also make this *prima facie* showing by putting forth evidence that, if proven to be true, would support jurisdiction over the defendant.  *Id*.  "[A]ny factual disputes in the parties' affidavits must be resolved in plaintiff's favor."  *Id*.

### D.    Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). In ruling on such a motion, the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal

5

rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556).

### III.  ANALYSIS

### A.  Subject Matter Jurisdiction Over Official Capacity Damages Claims

The federal defendants, in their official capacities, enjoy sovereign immunity from actions brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the BOP."); *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002) ("A *Bivens* action may not be brought against federal agencies or agents acting in their official capacities.") (citation omitted).  Sovereign immunity removes a court's jurisdiction over a complaint.  *See Governor of Kansas v. Kempthorne*, 516 F.3d 833, 846 (10th Cir. 2008) (noting "the strict jurisdictional nature of sovereign immunity").

Based on this well-settled authority, Judge Tafoya recommended that the Court dismiss Plaintiff's *Bivens* claims for monetary damages against the individual defendants in their official capacities.  (ECF No. 93 at 10.)  She noted that while Defendants did not raise this argument, she did so *sua sponte* because a federal court has an independent obligation to determine whether subject-matter jurisdiction exists, even absent a challenge from any party.  *Id.* (quoting *1mage Software, Inc. v. Reynolds & Reynolds Co.*, 459 F.3d 1044, 1048 (10th Cir. 2006) (citation omitted)).

6

Plaintiff objects, arguing there is "disputed evidence" on the matter and demanding an evidentiary hearing to ascertain facts relating to subject-matter jurisdiction.  (ECF No. 98 at 3.)

The Court's subject-matter jurisdiction over *Bivens* claims for monetary damages against individual defendants in their official capacities is a question of law that the Court can resolve—contrary to Plaintiff's objection—without an evidentiary hearing. Because Defendants enjoy sovereign immunity from *Bivens* actions, the Court overrules Plaintiff's objection and adopts the recommendation that the Court lacks subject-matter jurisdiction over the *Bivens* claims.  Plaintiff's *Bivens* claims for monetary damages against Defendants in their official capacities are dismissed with prejudice.

## B.     Personal Jurisdiction Over Defendants Hawk Sawyer and Krueger

Defendants argue, and the Magistrate Judge agreed, that the Court lacks personal jurisdiction over Hawk Sawyer and Krueger.  (ECF No. 93 at 10–11.)

No objections have been filed as to this portion of the Recommendation.  In fact, in the Objections, Plaintiff states that he asked the Court to remove these two defendants from the case and acknowledges that the Court does not have personal jurisdiction over them.  (ECF No. 98 at 3.)

Accordingly, the Court reviews this portion of the Recommendation for "clear error," because that is what the Federal Rules Advisory Committee recommends.  *See* Fed. R. Civ. P. 72 advisory committee note to 1983 amendments ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

Because the Court finds that Judge Tafoya's analysis is well-reasoned and

7

without clear error, it will adopt this portion of the Recommendation in full.  Accordingly, all claims against Hawk Sawyer and Krueger are dismissed without prejudice for lack of personal jurisdiction.

## C.    Availability of *Bivens* Remedy

In *Bivens*, the Supreme Court held that an implied private right of action for damages exists for a Fourth Amendment unlawful search and seizure claim against federal officials.  *Bivens*, 403 U.S. at 388.  The Supreme Court, however, has since made clear that "expanding the *Bivens* remedy is [ ] a disfavored judicial activity."  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (internal quotation marks omitted).  Indeed, for over thirty years, the Court "has consistently refused to extend *Bivens* to any new context or new category of defendants."  *Id.* (internal quotation marks omitted).

"If the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court], then the context is new."  *Id.* at 1859.  In such new contexts, "a *Bivens* remedy will not be available if there are special factors counseling hesitation in the absence of affirmative action by Congress."  *Id.* (internal quotation marks omitted).

If a plaintiff's claim is a "new context," the a federal court must consider "whether any alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages."  *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007).  "[T]he existence of alternative remedies usually precludes a court from authorizing a *Bivens* action."  *Abbasi*, 137 S. Ct. at 1865.

Moreover, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation."  *Id.*  In the context of prisoners seeking

*Bivens* remedies, the Supreme Court has noted the significance of the Prison Litigation

Reform Act, 42 U.S.C. § 1997e ("PLRA"):

> [I]t seems clear that Congress had specific occasion to
> consider the matter of prisoner abuse and to consider the
> proper way to remedy those wrongs . . . .  [T]he Act itself
> does not provide for a standalone damages remedy against
> federal jailers.  It could be argued that this suggests
> Congress chose not to extend the *Carlson* damages remedy
> to cases involving other types of prisoner mistreatment.

*Id.* at 1865.

In the Recommendation, Judge Tafoya found Plaintiff's *Bivens* claims

indisputably involve a new context.  (ECF No. 93 at 13.)  She observed it is "quite clear

that Plaintiff either currently has, or has had, various alternative remedies available to

him," including a damages suit under the Federal Tort Claims Act, 28 U.S.C. § 1346,

injunctive relief, or the Federal Bureau of Prisons's administrative grievance process.

(*Id.* at 13–14.)  Further, she noted that simply because some alternative remedies do

not award monetary damages, have different procedures, or ultimately do not prove

successful, is irrelevant.  (*Id.* at 14 (citing *Abbasi*, 137 S. Ct. at 1862).)

In addition, Judge Tafoya found that other factors—including Congress's

enactment of the PLRA and that the ACA granted the BOP waivers of a small number

of ACA standards and accredited FCI Englewood—counseled against the expansion of

*Bivens* here.  (*Id.* at 14–15 (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)

(directing courts to "accord substantial deference to the professional judgment of prison

administrators, who bear a significant responsibility for defining the legitimate goals of a

corrections system and for determining the most appropriate means to accomplish

them"); *Culver v. Fed. Bureau of Prisons (BOP)*, 2019 WL 5298551, at *4 (N.D. Fla.

Sept. 24, 2019) ("Congress's refusal to enact a damages remedy for federal prisoners counsels against the Court implying one here."); *Hoffman v. Preston*, 2019 WL 5188927, at *6 (E.D. Cal. Oct. 15, 2019) ("[T]he language and reforms imposed by the PLRA indicate that Congress would not approve an implied damages remedy for the claim presented here.")).)

Plaintiff objects to the Recommendation, citing cases that pre-date *Abbasi* and its clear directives concerning the "disfavored" *Bivens* remedy.  (ECF No. 98 at 5–6.)  In addition, Plaintiff explains why each available alternative remedy identified by Judge Tafoya may not be successful.  (*Id.* at 6–7.)  Emphasizing that Judge Tafoya "has not fully understood the lengths Plaintiff has taken to address these problems prior to filing suit," Plaintiff argues that "[e]ven the PLRA affords prisoners the right to bring suit against prison officials when they meet exhaustion requirements" which he has done.  (*Id.* at 7.)  Plaintiff also objects to the idea that the Supreme Court has directed courts to accord substantial deference to the professional judgment of prison administrators, contending "this is not the same as writing a blank check to violate prisoners' constitutional rights, such as what is still occurring at FCI Englewood."  (*Id.* at 8.)

The Court finds the Objections are without merit.  As Judge Tafoya explained, simply because the alternative remedies may not be successful is irrelevant to the issue of whether *Bivens* should be extended to a new context.  The remedies are, nonetheless, available.  Similarly, the Court is satisfied that, despite the Objections, the special factors identified in the Recommendation militate in favor of refusing to expand *Bivens*.  *See Medina v. Danaher*, 445 F. Supp. 3d 1367, 1372 (D. Colo. 2020) ("If any special factors are present, 'a *Bivens* remedy will not be available.' . . .  This second

10

step 'creates a very low bar' for a defendant to clear." (citation omitted)).

Therefore, the Court overrules Plaintiff's Objections and adopts the recommendation that a *Bivens* remedy is not available here.  Plaintiff's *Bivens* claims for monetary damages against Defendants in their individual capacities are dismissed with prejudice.

**D.    Personal Participation**

"To establish *Bivens* liability, a plaintiff is required to bring forth evidence that an individual defendant directly and personally participated in the purported constitutional violation."  *Persaud v. Doe*, 213 F. App'x 740, 743 (10th Cir. 2007) (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007)).  To establish personal participation, the plaintiff must show that each defendant caused the deprivation of a federal right.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise.  *See Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir.1993).  In *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (emphasis in original), the Tenth Circuit noted that in a civil rights case asserting claims against individual government actors, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" against an entire group of defendants.

In the Recommendation, Judge Tafoya found that Plaintiff has not plausibly alleged that "Grelick or Zerr played a role in the decisions that led to the reconfiguration

11

of Plaintiff's housing unit and the alleged reduction of square footage, toilets, wash basins, and showers." (ECF No. 93 at 17.) Rather, in each of his six claims, Plaintiff has merely alleged that Defendants are "responsible for these living conditions." (*Id.* (citing ECF No. 15 at 5, 7, 9–11).) Because general supervisory authority is insufficient to show personal participation, Plaintiff's allegations do not pass muster. (*Id.* (citing *Sexton v. Hickenlooper*, 2014 WL 1091936, at *13 (D. Colo. Mar. 19, 2014)).)

In the Objections, Plaintiff asserts that "it is plainly evident from the responses to the various administrative remedies attempts that Warden Greilick and Officer S. Zerr were personally involved from the deliberate indifference displayed in their responses." (ECF No. 98 at 10.) He argues that Defendants were made personally aware of the constitutional violations but nonetheless turned a blind eye to the problems. (*Id.*) Plaintiff then states that he "never claimed that 'Defendants Greilick or Zerr played a role in the decisions that led to the reconfiguration of Plaintiffs' housing unie [*sic*].'" (*Id.* at 11.) Contrary to the Recommendation, Plaintiff asserts that he has alleged Defendants' personal responsibility to ensure the facility meets the constitutional requirements of the Eighth Amendment and that Defendants were deliberately indifferent to their responsibilities.

The Court disagrees. The allegations in the Amended Prisoner Complaint generally state that "The persons responsible for these living conditions are the [Defendants]." (ECF No. 15 at 5, 7, 9–11.) Plaintiff also alleges in a conclusory manner that each defendant was aware or made aware of the facts giving rise to constitutional violations. (*Id.* at 5, 7–10.) These allegations are undifferentiated, collective allegations that are insufficient to state a *Bivens* claim, for they do not allow

12

the Court to individually assess each defendant's conduct and culpability.  *See Graham*, 473 U.S. at 166.

Therefore, the Court overrules Plaintiff's Objections and adopts the recommendation that Plaintiff has failed to sufficiently allege Defendants' personal participation in the alleged constitutional violations.  In addition to the unavailability of a *Bivens* remedy, these are grounds for dismissal of Plaintiff's claims for monetary damages against Defendants in their individual capacities.[2]

## E.   Official Capacity Claims

The only claims remaining are Plaintiff's claims for injunctive relief against Defendants Grelick and Zerr in their official capacities.

1.   *Claims for Failure to Follow ACA Guideline or Prison Administrative Regulations*

Prison regulations are "primarily designed to guide correctional officials in the administration of a prison.  [They are] not designed to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995).  The Supreme Court has found that ACA standards concerning minimum space requirements for different institutions "simply do not establish the constitutional minima" for a claim; rather, "they establish goals recommended by the organization in question."  *Bell v. Wolfish*, 441 U.S. 520, 543 n.27 (1979).  Accordingly, allegations that government actors fail to follow their own

---

[2] Though it is unclear from the manner in which the Amended Prisoner Complaint is pled (ECF No. 15), to the extent Plaintiff has brought claims for injunctive relief against Defendants in their individual capacities, the Court dismisses such claims as unavailable.  *See Baxter v. Samples*, 2009 WL 2242252, at *9 (D. Colo. July 22, 2009) ("The injunctive relief sought by . . . Baxter is not within the authority of the Defendants in their individual capacities.  To the extent that . . . Baxter seeks injunctive relief from the individual Defendants in the form of a transfer to the state prison system . . . , such injunctive relief is only available in an official capacity suit.").

regulations, or those of other entities, cannot be grounds for a constitutional claim.

Judge Tafoya recommended that, to the extent Plaintiff alleges violations of failure to follow the aspirational goals set forth in ACA standards or administrative guidelines, the claims should be dismissed.  (ECF No. 93 at 18.)

In the Objections, Plaintiff appears to agree that ACA standards do not establish the constitutional minima for a claim, citing *Bell*.  (ECF No. 98 at 12.)  He states that this authority is "specifically the reason [he] claimed his Eighth Amendment rights were being violated."  (*Id.*)

To the extent the Plaintiff objects, the objection is overruled, and the Recommendation is adopted on this point.  Any allegations that Defendants have violated the ACA standards or administrative guidelines are dismissed without prejudice.

       2.    *Eighth Amendment Claims*

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm."  *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citation omitted).  To succeed on an Eighth Amendment conditions-of-confinement claim, a plaintiff must show, first, that his conditions of confinement are sufficiently serious to give rise to a constitutional violation, *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 810 (10th Cir. 1999), and, second, that the defendants knew of and disregarded an excessive risk to the plaintiff's health or safety.  *Tafoya*, 516 F.3d at 916.

a.   Objective

The objective prong of the Eighth Amendment requires that "the deprivation alleged must be, 'objectively, sufficiently serious'" such that "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'"  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citations omitted).  This prong examines whether 'the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

Plaintiff alleges that FCI Englewood is "overcrowded" in violation of the Eighth Amendment because it operates at over 200% of its rated capacity.  (ECF No. 15 at 5–6.)  He also alleges that the number of toilets, sinks, and showers in his housing unit violates the Eighth Amendment, as does FCI Englewood's poor indoor air quality and lack of compliance with the National and Colorado State Fire and Life Safety Codes. (*Id.* at 7–11.)

In the Recommendation, Judge Tafoya explained that "rated capacity" and "operating capacity" are distinct measurements and that Plaintiff improperly conflates the terms in his Amended Prisoner Complaint.  (ECF No. 93 at 20.)  Judge Tafoya found that as to his living quarters, the number of toilets, sinks, or showers at FCI Englewood, Plaintiff failed to allege an objectively, sufficiently serious deprivation that resulted in the denial of "the minimal civilized measure of life's necessities."  (*Id.*) Regarding overcrowding, she referenced the Supreme Court's recognition that the relevant question for Eighth Amendment consideration is not whether the population of a facility exceeds its rated capacity, "but whether the actual conditions of confinement . . . are cruel and unusual."  *Rhodes v. Chapman*, 452 U.S. 337, 351 n.15 (1981).

Regarding his allegations about toilets and wash basins, Judge Tafoya concluded Plaintiff failed to allege that toilets and sinks are not available for his use during the many hours when he is, or can be, outside the unit, nor has he alleged a single instance when he did not have access to a toilet or sink.  (ECF No. 93 at 21.) Similarly, she found Plaintiff does not allege he cannot shower when he wants, let alone that he has had to forego showering for any significant amount of time.  (*Id.*)

Finally, Judge Tafoya thoroughly examined Plaintiff's allegations of health issues caused by his confinement and found he has failed to allege facts to support his "self-serving, conclusory assessment."  (*Id.* at 21–23.)

Plaintiff objects, noting that the BOP Regional Office in Kansas City has ordered FCI Englewood to reduce its population to no more than 130% of its rated capacity and stating that such an order would "not be forthcoming if the BOP was not concerned that an Eighth Amendment violation had occurred."  (ECF No. 98 at 12–13.)  Plaintiff appears to believe Judge Tafoya relied on Associate Warden Collins's testimony submitted in response to Plaintiff's motion for a temporary restraining order.  (*Id.* at 13.) To that end, Plaintiff argues that Collins's statements are "perjured testimony" and figures presented by her are unsupported and conclusory.  (*Id.*)  He rhetorically asks, "Where does the Court believe the line exists to prove that the conditions at FCI Englewood violate the Eighth Amendment?" and states he "believes that line has already been crossed."  (*Id.*)

In the Objections, Plaintiff also relies on the ongoing COVID-19 pandemic to support his argument that his facility is overcrowded in violation of the Eighth Amendment.  (*Id.* at 13–14.)  He observes that inmates have been confined to their

16

living areas for nearly six months, and only in the past month have they been allowed one hour, four days a week, outside for exercise.  (*Id.* at 14.)  Given these circumstances, Plaintiff disagrees with Judge Tafoya's conclusion that "[his] allegations fail to state that they are cruel and unusual, especially when viewed in a context where he can engage in myriad activities outside the Unit up to 14 hours a day."  (*Id.*)  He complains that inmates cannot social distance, must wait in line to use the bathroom and shower facilities, and are at risk of contracting COVID-19 because of inadequate ventilation.  (*Id.*)

The Court disagrees.  Judge Tafoya correctly concluded that Plaintiff's contention that the prison is overcrowded because it is operating above its rated capacity "shows no deprivation of constitutional significance."  (ECF No. 93 at 20.)  In reaching this conclusion, Judge Tafoya properly took judicial notice of the BOP Program Statement 1060.11 regarding rated capacities.  (*Id.* at 20 n.3.)  Contrary to Plaintiff's Objections, there is no indication she relied on Collins's statements.

To the extent Plaintiff takes issue with the Recommendation because the COVID-19 has changed circumstances in the prison, his arguments are unavailing. Plaintiff's complaint contains no claims related to COVID-19, which had no bearing on Judge Tafoya's analysis of the defects in his pleading.  Under these circumstances, Plaintiff has failed to allege the objective prong of his Eighth Amendment claims.

Therefore, the Court overrules Plaintiff's objections and adopts this portion of the Recommendation.

       b.    <u>Subjective</u>

The subjective prong requires that "a prison official must have a sufficiently

17

culpable state of mind.  In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety."  *Farmer*, 511 U.S. at 834.  "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  The subjective prong requires that each defendant act with a criminally reckless state of mind.  *Id.* at 839.  This high standard "isolates those who inflict punishment" because "[t]he Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"  *Id.* at 837, 839.

Because Plaintiff failed to allege the objective element of an Eighth Amendment claim, in the Recommendation, Judge Tafoya found she need not address whether Plaintiff met the subjective element of an Eighth Amendment claim.  (ECF No. 93 at 23.)

While it is somewhat unclear whether Plaintiff objects to this portion of the Recommendation, the Court notes that he states,

> With regard to Plaintiff's Eighth Amendment claims, Plaintiff meets the subject [*sic*] prong by showing that 'a prison official must have a sufficiently culpable state of mind,' showing that the deliberate  indifference of the two remaining defendants as well as the blatant perjured testimony of Associate Warden Collins' effort to support her administrative staff associates.

(ECF No. 98 at 13.)

The Court agrees with Judge Tafoya that because Plaintiff has failed to allege

18

the objective element of an Eighth Amendment claim, the Court need not address whether he meets the subjective element.  Nonetheless, the Court finds—for the same reasons as it did regarding Plaintiff's allegations regarding Defendants' personal participation—that Plaintiff's claims are insufficient to allege the subjective element of an Eighth Amendment claim.

Thus, to the extent Plaintiff objects to the Recommendation's failure to assess the subjective element, his Objections are overruled, and the Court adopts this portion of the Recommendation.

**F.     Qualified Immunity**

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Qualified immunity is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial."  *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) (emphasis in original).

"In resolving a motion to dismiss based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct."  *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (citation and internal quotations omitted).  Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to

satisfy either part. *Dodd v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010). Where no constitutional right has been violated "no further inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

Judge Tafoya recommended that because Plaintiff failed to state constitutional claims against Defendants Grelick and Zerr, they are entitled to qualified immunity on the claims for money damages asserted against them in their individual capacities.

The Court agrees. As explained above, Plaintiff has failed to allege a constitutional violation, and therefore, the Court need not address whether he has alleged that Defendants violated a clearly established right.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Recommendation of the United States Magistrate Judge (ECF No. 93) is ADOPTED;

2. Plaintiff's Objections (ECF No. 98) are OVERRULED;

3. Defendants' Motion to Dismiss Pursuant to Rules 12(b)(2) and 12(b)(6) (ECF No. 39) is GRANTED;

4. The Amended Prisoner Complaint (ECF No. 15) is DISMISSED as set forth above;

5. The Clerk shall enter Judgment in favor of Defendants and against Plaintiff;

6. All parties shall bear their own fees and costs; and

7. The Clerk shall terminate the case.

Dated this 2nd day of November, 2020.

BY THE COURT:

_____
William J. Martínez
United States District Judge